954 F.2d 624
 Bruce LUCERO, M.D., and Jane Doe(s), being fictitious names,
real names of said plaintiffs being withheld to protect
their privacy, said fictitious names being intended to
designate present and prospective patients and staff members
of Dr. Lucero, Plaintiffs-Appellants,
v.
OPERATION RESCUE OF BIRMINGHAM, Birmingham Rescue Mission,
Randall Terry, Joseph Foreman, James Pinto, Leonard Gavin,
John Michael Vice, Bill Stamp, Doug Scofield, Scott Houser,
and all other individuals, associations and organizations
whose names or legal identities are otherwise unknown to
plaintiffs at this time, with whom they have conspired and
acted in concert to deprive plaintiffs of their rights,
Defendants-Appellees.
 No. 91-7685.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 5, 1992.
Rehearing and Rehearing En Banc
Denied April 16, 1992.
 
 Alan Pollack, Pollack & Green, New York City and David Elliott Hodges, Fligel & Hodges, Birmingham, Ala., for plaintiffs-appellants.
 Albert Jordan, Wallace, Brooke & Byers, Birmingham, Ala., for Scott Houser.
 Michael J. Evans, Longshore, Evans & Longshore and Kimberly R. West, Scofield, West & French, Birmingham, Ala., for Rev. James Pinto.
 Donald LeMar Collins, Birmingham, Ala., for Bill Stamp.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.
 TJOFLAT, Chief Judge:
 
 
 1
 Plaintiffs appeal from an order[1] denying their application for preliminary injunction[2] in the Northern District of Alabama. The complaint accompanying plaintiffs' motion for a preliminary injunction alleges that defendants had conspired (1) to deny plaintiff Dr. Bruce Lucero's "patients who are seeking abortions, family planning counselling, and gynecological services, the equal protection of the laws and the privileges and immunities guaranteed under the law," and (2) "to deprive Dr. Lucero's patients of their right to travel," both in violation of 42 U.S.C. § 1985(3) (1988).[3] The complaint further asserts that defendants were "motivated by an invidiously discriminatory animus directed at women who seek the services of Dr. Lucero, as a provider of abortions and related medical services." The district court, upon an evidentiary hearing, concluded that it lacked subject matter jurisdiction and denied plaintiffs' application. Although we find that the district court had jurisdiction to entertain the application, we affirm because plaintiffs have failed to satisfy the requirements for the issuance of a preliminary injunction.
 
 I.
 
 2
 Plaintiff Dr. Lucero is a gynecologist in Birmingham, Alabama, who provides his patients with general gynecological services, including pregnancy and blood testing, prescriptions for birth control, family counseling, and abortions. Dr. Lucero sues on behalf of himself and of his patients. Purportedly, plaintiff Jane Doe represents one or more of Dr. Lucero's patients.
 
 
 3
 Defendants Operation Rescue of Birmingham and Birmingham Rescue Mission are unincorporated associations affiliated with Operation Rescue, an unincorporated association whose members oppose abortion and its legalization. Defendants Randall Terry, Joseph Foreman, James Pinto, Leonard Gavin, William Stamp, Doug Scofield, and Scott Houser are alleged to have organized and coordinated, and defendants Operation Rescue of Birmingham, Birmingham Rescue Mission, and Michael Vice to have participated in, so-called "rescues." According to the district court, "[a] rescue consists of a large number of people physically placing their bodies between the doors of facilities where abortions are performed and those seeking to gain entrance to the facility." 772 F.Supp. at 1196. The facilities of plaintiff Dr. Lucero have been the object of at least five so-called rescues, including one on March 2, 1991. 772 F.Supp. at 1197. The district court found that "[a]s a result of rescues conducted at Birmingham area abortion facilities, patients and staff of various facilities have been denied entrance to the facility for substantial periods of time until the Birmingham police aid their entry." 772 F.Supp. at 1196. More specifically, the district court found that the so-called rescue at plaintiff Dr. Lucero's clinic on March 2
 
 
 4
 was significantly violent and resulted in some physical injuries of Clinic workers and police officers. The rescue traumatized and caused mental anguish to the Clinic's patients and workers. The activities of the rescue protesters were violent and intentionally went beyond protected peaceful First Amendment activity.
 
 
 5
 772 F.Supp. at 1197-98 (footnote omitted).
 
 
 6
 After conducting an evidentiary hearing, the district court held that it lacked subject matter jurisdiction to entertain plaintiffs' application for preliminary injunction under section 1985(3). Acknowledging that it would have jurisdiction to entertain a "properly stated claim under § 1985(3)," 772 F.Supp. at 1207 n. 43, the district court also concluded that, assuming jurisdiction, "all of the requirements for preliminary injunction relief have been satisfied." 772 F.Supp. at 1199.
 
 
 7
 We disagree with the district court on both counts and hold, first, that the district court had jurisdiction to entertain plaintiffs' application for preliminary injunction, and, second, that plaintiffs failed to state a claim under section 1985(3). We nevertheless affirm the district court's denial of plaintiffs' application for preliminary injunction because plaintiffs failed to carry the burden of persuasion on one of the requirements for the issuance of a preliminary injunction: substantial likelihood of success on the merits.
 
 II.
 A.
 
 8
 We review a district court's denial of an application for preliminary injunction under an abuse of discretion standard. Tally-Ho, Inc. v. Coast Community College District, 889 F.2d 1018, 1022 (11th Cir.1990). We adopt the district court's findings of fact unless clearly erroneous, but review jurisdictional questions de novo. See Mobil Oil Corp. v. City of Long Beach, 772 F.2d 534, 538 (9th Cir.1985); see also United States v. Alabama, 791 F.2d 1450 (11th Cir.1986), cert. denied sub nom. Board of Trustees of Alabama State University v. Alabama State Board of Education, 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987).
 
 
 9
 The district court clearly had jurisdiction to entertain plaintiffs' section 1985(3) claim. As the Supreme Court explained in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946),
 
 
 10
 where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions ... must entertain the suit.
 
 
 11
 ... The ... exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim ... clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.
 
 
 12
 Id. at 681-83, 66 S.Ct. at 776.
 
 
 13
 The complaint in this case sought recovery under a law of the United States, 42 U.S.C. § 1985(3) (1988). The district court nowhere indicated that either exception applied in this case. As we find both exceptions inapplicable, we hold that the district court had jurisdiction over plaintiffs' section 1985(3) claim.
 
 B.
 
 14
 "To prevail on [their] motion for a preliminary injunction, [plaintiffs] ha[ve] the burden of proving: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) [their] own injury outweighs the injury to [defendants]; and (4) the injunction would not disserve the public interest." Tally-Ho, 889 F.2d at 1022. Plaintiffs failed to establish a substantial likelihood of success on the merits because they did not state a claim under section 1985(3). In particular, plaintiffs failed to identify "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind defendants' actions, as required under Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).
 
 
 15
 The elements of a cause of action under section 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 829, 103 S.Ct. at 3356 (quoting Griffin, 403 U.S. at 102, 91 S.Ct. at 1798).[4]
 
 
 16
 Plaintiffs alleged in their complaint that defendants' actions were motivated by "an invidiously discriminatory animus directed at women who seek the services of Dr. Lucero, as a provider of abortions and related medical services." In contrast, the district court found, as a matter of fact, that "[t]he animus is directed at the practice of abortion and the concept that its practice is legal.... The animus is against the principle that it is morally and legally right to abort a fetus." 772 F.Supp. at 1205 n. 37. The court also found that defendants' animus targeted neither "women as a group" nor "pregnant women," id., but that "[t]he activity challenged ... is clearly directed at that class of women seeking to exercise their fundamental and constitutional right to obtain an abortion and those persons who would aid them in doing so." Id. at 1196.
 
 
 17
 Although the court did not explicitly find that defendants did not display the animus specified in the complaint, its finding of an animus other than that alleged in the complaint implies the finding that plaintiffs failed to carry the burden of persuasion on the class issue. We adopt the district court's findings of fact unless clearly erroneous. The record before us amply supports the district court's determination that plaintiffs did not carry the burden of persuasion on this issue. Accordingly we see no reason to disturb the district court's finding.[5]
 
 
 18
 The record simply does not warrant a finding that defendants' animus singled out "women who seek the services of Dr. Lucero, as a provider of abortions and related medical services." This case is closely analogous to a recent Fifth Circuit case, Mississippi Women's Medical Clinic v. McMillan, 866 F.2d 788 (5th Cir.1989). In that case, Mississippi Women's Medical Clinic (MWMC) sought a preliminary injunction pursuant to section 1985(3) prohibiting anti-abortion protesters from picketing its clinic. Id. at 790. Much like plaintiffs in this case, MWMC defined the object of the defendants' animus as "women of childbearing age who seek medical attention from the MWMC." Id. at 794. Finding this class to be "so under-inclusive as to mischaracterize the dispute," the Fifth Circuit pointed out that
 
 
 19
 the protestors do not target their pro-life advocacy at any particular group. The protestors (who are made up of both men and women) confront and try to persuade to their point of view all groups--men, women of all ages, doctors, nurses, staff, the female security guards, etc. ... [T]he animus of the protestors is to dissuade anyone who contributes to the incidence of abortions.
 
 
 20
 Id. at 794 (emphasis in original).
 
 
 21
 Much like the Fifth Circuit in MWMC, we find that the record in the present case does not support a finding that defendants' actions were motivated by a gender-based animus. Instead, the record amply supports a finding that defendants' actions were motivated by a disapproval of a certain activity, namely the abortion of a fetus, and therefore were designed to prevent individuals, women and men alike, from engaging in that activity. Nothing in the record suggests that defendants' efforts to "depriv[e], directly or indirectly, a class of women who seek abortions of the constitutional right that they have to secure abortions," 772 F.Supp. at 1198 (footnote omitted), sprang from an animus directed at women qua members of the female gender.
 
 
 22
 Even assuming arguendo that Congress intended section 1985(3) to cover activities motivated by a gender-based animus,[6] the record in this case does not support a finding of this kind of animus. As the district court found, defendants' animus targeted the "practice of abortion," 772 F.Supp. at 1205 n. 37, and therefore motivated actions designed to prevent others from engaging in that practice. While the participation of women in the practice of abortion hardly is incidental, the record in this case supports the finding that defendants' actions nevertheless were motivated by an animus not primarily directed at members of the female gender, but at a practice. On the record of this case, it further would not have been clearly erroneous to find that the make-up of, and particularly the participation of women in, the group of persons engaging in that practice did not arouse the animus motivating defendants to stage their so-called rescues.[7]
 
 
 23
 Seeing no reason to disturb the district court's finding that plaintiffs failed to carry their burden of persuasion on an element of their section 1985(3) claim, we conclude that plaintiffs did not meet one of the requirements for the issuance of a preliminary injunction.
 
 III.
 
 24
 For the reasons above stated, we AFFIRM the district court's denial of plaintiffs' application for preliminary injunction.
 
 
 25
 AFFIRMED.
 
 KRAVITCH, Circuit Judge, dissenting:
 
 26
 I agree with the majority that the district court erred in its determination that the federal courts lack jurisdiction in this case. I disagree, however, with the conclusion that the plaintiffs failed to establish the elements of a cause of action under section 1985(3) and that the district court was therefore correct in refusing to grant a preliminary injunction barring further "rescues" at the clinic. In my view, both the district court and the majority have misapplied the law. I therefore dissent from the majority's decision.
 
 
 27
 I. The Framework of Claims Under Section 1985(3)
 
 
 28
 Plaintiffs alleged that the defendants, Operation Rescue and other named and unnamed individuals, violated 42 U.S.C. § 1985(3) by blocking access to Dr. Bruce Lucero's medical clinic, which delivers gynecological care, including abortion and abortion-related services, to women. Section 1985(3) was originally enacted by Congress as part of the Ku Klux Klan Act of 1871 and creates a cause of action for private conspiracies with "the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."
 
 
 29
 As the majority notes, two Supreme Court opinions, United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), and Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), provide the analytical framework for examining claims under section 1985(3). According to Scott, a plaintiff must establish four elements:
 
 1. a conspiracy
 
 30
 2. for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
 
 3. an act in furtherance of the conspiracy
 
 31
 4. whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
 
 
 32
 Scott, 463 U.S. at 828-29, 103 S.Ct. at 3356. Under Griffin, plaintiffs must demonstrate that there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 102, 91 S.Ct. at 1798.
 
 
 33
 Together, Griffin and Scott require that there be a class of plaintiffs whose constitutional rights are violated or threatened with violation, and that the action taken by the defendants be motivated against the plaintiffs because of their membership in that class. Plaintiffs alleged that Operation Rescue had formed a conspiracy to violate women's rights both to abortion and to interstate travel, and that the conspiracy was driven by a gender-based animus.
 
 
 34
 The questions of class and animus are separate but related. The issue of whether women, or a subgroup of women, are entitled to protection under section 1985(3) is distinct from whether the motivation fueling the defendants is gender-based. The majority, however, conflates the two:
 
 
 35
 Although the court did not explicitly find that defendants did not display the animus specified in the complaint, its finding of an animus other than that alleged in the complaint implies the finding that plaintiffs failed to carry the burden of persuasion on the class issue. We adopt the district court's findings of fact unless clearly erroneous.
 
 
 36
 Majority op. at 628.
 
 
 37
 The majority simply states that "the plaintiffs failed to carry the burden of persuasion on the class issue" without analyzing either the district court's reasoning or the plaintiffs' claims. The district court describes the class as women who seek abortions, but this analysis again merges the issues of class and animus. The class is more appropriately defined as women as a whole. The motive, or animus, of the conspirators is directed at women who seek an abortion. There are thus two questions: First, whether women are a class protected by section 1985(3); second, whether animus directed at abortion, or women seeking abortion, is gender-based, thus meeting the requirement of Griffin.
 
 II. Women as a Class Under Section 1985(3)
 
 38
 The Supreme Court has declined to reach the issue of whether section 1985(3) reaches groups other than Blacks. The Court left the question open in Griffin; the majority in Scott decided only that the Act was not meant to protect conspiracies based on economic bias, and stated that it was "a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." Scott, 463 U.S. at 836, 103 S.Ct. at 3360.
 
 
 39
 Seven circuits have held that women are included within the purview of section 1985(3).[1] In New York State National Organization for Women v. Terry, 886 F.2d 1339 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990), the Second Circuit noted that the "very language [of section 1985(3) ] is necessarily tied to evolving notions of equality and citizenships." 886 F.2d at 1339. Moreover, "as conspiracies directed against women are inherently invidious and repugnant to the notion of equality of rights for all citizens, they are therefore encompassed under the Act." Id. (citing Frontiero v. Richardson, 411 U.S. 677, 687, 93 S.Ct. 1764, 1770-71, 36 L.Ed.2d 583 (1973)).
 
 
 40
 Congress' main intention was to protect newly freed Blacks but as the Griffin Court observed, the "Act's supporters in Congress repeatedly stressed the theme of preventing 'deprivations which shall attack the equality of rights of American citizens.' " Griffin, 91 S.Ct. at 1797 (quoting Cong. Globe, 42nd Cong., 1st Sess., App. 478 (remarks of Rep. Shellabarger)). Women certainly were not at the forefront of Congress' concern when it enacted the Ku Klux Klan Act in 1871; women were barred from voting until 1920, almost fifty years later. The Act as written, however, is not specifically limited to Blacks, and its goal of protecting groups from those who seek to deprive them of their constitutionally guaranteed rights is equally applicable to women.
 
 III. Gender-Based Animus
 
 41
 The majority incorrectly reads the district court as making a factual finding that defendants were not motivated by a gender-based animus because their animus was directed at the "practice of abortion." The majority regards this "finding" as not clearly erroneous. Majority op. at 628. There are several problems with this analysis. First, the district court made no such "finding of fact" regarding either the class or the animus issue. Rather, the district court stated that it "will not decide at this stage whether there is satisfaction of the element of a 'perhaps' otherwise class-based invidiously discriminatory animus behind the conspirators' actions." Lucero v. Operation Rescue of Birmingham, 772 F.Supp. 1193, 1205 n. 37 (N.D.Ala.1991).[2] Moreover, the district court in fact found that the defendants acted "for the purpose of depriving, directly and indirectly, a class of women who seek abortions of the constitutional right that they have to secure abortions." Id. at 1198.
 
 
 42
 Second, the majority's view that an animus directed at the "practice of abortion" is not gender-based is incorrect as a matter of law. Gender-based animus does not necessarily mean hostility or ill-will toward women. Many, if not most, discriminatory restrictions on women have been enacted as being "for their own good," to "protect" women from themselves or the burdensome responsibilities of full citizenship. See Frontiero v. Richardson, 411 U.S. 677, 682-88, 93 S.Ct. 1764, 1768-70, 36 L.Ed.2d 583 (1973) (recounting the history of discrimination against women in the name of "romantic paternalism"). As the Supreme Court noted most recently in International Union, UAW v. Johnson Controls, --- U.S. ----, 111 S.Ct. 1196, 1203-04, 113 L.Ed.2d 158 (1991), a claimed benevolence toward women and their reproductive capacities does not neutralize a discriminatory motive.
 
 
 43
 The majority correctly concedes that it is irrelevant that the defendants targeted men who were assisting women seeking an abortion. The Supreme Court reiterated in Scott that "animus against Negroes [included] those who championed their cause." 463 U.S. at 836, 103 S.Ct. at 3360. Nor do the defendants have to target all women in order for their motivation to be based on gender. In this case, the defendants have targeted women who seek to exercise their right to an abortion,[3] a right they possess because they are women and because they can become pregnant. As the Second Circuit noted in Terry,
 
 
 44
 In most cases of invidious discrimination, violations of constitutional rights occur only in response to the attempts of certain members of a class to do something that the perpetrators found objectionable, such as traveling interstate with the perceived purpose of promoting civil rights.
 
 
 45
 Terry, 886 F.2d at 1359.
 
 
 46
 The majority justifies its holding on animus by distinguishing abortion from gender. "What is missing," the court says, "is any indication that the gender of the pregnant women represents the source of defendants' animus." Majority op. at 626, n. 7. This analysis flies in the face of both common sense and the law. The women who seek entry to Dr. Lucero's clinic--and are thus the objects of defendants' conspiracy--are linked by their ability to bear children and to undergo abortion, abilities that are unique to them as women. If they were not women they could not be pregnant and could not seek abortions. Defendants are motivated by a desire to stop these women, and those who champion them, from obtaining abortions. This is the animus that drives the defendants to blockade clinics and refuse doctors and patients entry to medical offices.
 
 
 47
 Congress, too, has recognized that it is senseless to deny the link between gender and pregnancy--and abortion. After Geduldig v. Aiello,[4] 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), Congress acted quickly to amend Title VII to make clear that discrimination on the basis of pregnancy is discrimination on the basis of sex. It is no great leap to recognize that if pregnancy is related to gender, so is abortion.
 
 
 48
 The majority's insistence that Operation Rescue opposes a "practice" that has nothing to do with women brings abstraction to a new level of absurdity. It is impossible to sever the link between abortion and gender. Only women become pregnant and only women have abortions. For too long women have been invisible in much of the law. The majority now erases women from pregnancy, childbirth, and abortion as well.
 
 IV. Deprivation of the Right to Travel
 
 49
 The majority correctly notes that section 1985(3) does not create any substantive rights, but merely provides a remedy for violations of other constitutional rights by private conspiracies. See Griffin, supra. The Supreme Court has held that if the right deprived arises under the Fourteenth Amendment, plaintiffs must make a showing of state action. See Scott, 103 S.Ct. at 3357-58. Plaintiffs asserted that the defendants' conspiracy violates two distinctive rights, the right to travel interstate and the right to abortion.
 
 
 50
 For reasons that are not completely clear, the district court held that the plaintiffs had not "met their burden of proof under a 'right to travel' claim (assuming that there can be such an independent claim)." Lucero, 772 F.Supp. at 1205. Contrary to the doubts expressed by the district court, the Supreme Court has held that it is "firmly established that the right of interstate travel is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertable against private as well as governmental interference." Griffin, 403 U.S. at 105, 91 S.Ct. at 1800 (citations omitted).
 
 
 51
 The trial court also misread the elements of a claim for the deprivation of the right to travel under section 1985(3). There is no requirement that defendants' animus be directed at travelers qua travelers or that plaintiffs produce an out-of-state patient who had been denied access to the clinic because of a "rescue." In Griffin the Supreme Court cautioned against the first misinterpretation:
 
 
 52
 The motivation requirement introduced by the word "equal" into the portion of § 1985(3) before us must not be confused with the test of "specific intent to deprive a person of a federal right made definite by decision or other rule of law".... Section 1985(3), unlike § 242, [which provides for criminal penalties] contains no specific requirement of "wilfulness." The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus.
 
 
 53
 Griffin, 403 U.S. at 102, n. 10, 91 S.Ct. at 1798 n. 10 (citation omitted). Moreover, the language of section 1985(3) itself provides a remedy for either direct or indirect deprivations of rights. Plaintiffs are required to show only that defendants have the requisite gender-based animus and that interstate travelers were deprived of their constitutionally protected rights.
 
 
 54
 The trial court also applied the wrong standard of proof in evaluating the plaintiffs' claim for a violation of the right to travel. First, the Supreme Court has held that the right to travel includes the right to travel to seek medical treatment, including abortion. See Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Second, because this is an action for an injunction barring future harm, and not a demand for damages to compensate for past harm, plaintiffs are required to show only that in the future there is a substantial likelihood that the defendants will violate the right to travel of a member of the protected class. In other words, plaintiffs must demonstrate that there is a substantial likelihood that the class contains out-of-state travelers who will be barred from visiting the clinic if the defendants are allowed to continue their "rescues."
 
 
 55
 The trial court's findings of fact establish that plaintiffs have carried their burden. The court found that Dr. Lucero sees approximately 3,000 patients a year and performs approximately 1,500 abortions a year. Medical records introduced by Dr. Lucero "suggest" that over the last six months, 1.5% of his patients lived outside of Alabama. The district court concluded that there was a "reasonable inference that patients who reside outside of Alabama have been referred to the Clinic by others outside Alabama. The fact that the Clinic performs abortions beyond the first trimester contributes to this fact." Lucero, 772 F.Supp. at 1196. Finally, the court found:
 
 
 56
 A portion of Lucero's patients may travel from states other than Alabama to his office. If on the day such rescues occurred, any woman from outside the State of Alabama had been seeking to enter Lucero's office for an abortion, she, as well as residents would have been impeded from attaining access to the Clinic during the rescue period.
 
 
 57
 Id. Although the district court concluded that these facts indicate that patients "may have traveled across state lines to reach his office," Id. at 1195 (emphasis added), it is difficult to imagine how Dr. Lucero could have 225 out-of-state patients in the last six months, perhaps 145 of them seeking abortions, and not have patients who engaged in constitutionally protected interstate travel. There is a substantial likelihood that when the defendants engage in another "rescue" and block all entry to Dr. Lucero's clinic, they will deny access to medical treatment to women who have traveled to Alabama from another state.
 
 
 58
 V. Requirements for a Preliminary Injunction
 
 
 59
 The district court ruled that if the federal courts had jurisdiction over this claim, plaintiffs would have met all of the requirements for preliminary injunctive relief by demonstrating a substantial likelihood of success on the merits; that defendants' actions threatened irreparable injury to the plaintiffs; that the threatened injury to plaintiffs outweighed any harm that might result to the defendants; and that the public would be served by the issuance of a preliminary injunction. Lucero, 772 F.Supp. at 1199.
 
 
 60
 The majority does not take issue with any of the district court's findings regarding the violence of the "rescue," which "traumatized and caused mental anguish to the Clinic's patients and workers." Id. at 1197-98, quoted in Majority op. at 626. Nor does it dispute the characterization of the rescuer's activities as "violent and intentionally ... beyond protected peaceful First Amendment activity." Id. Instead, the majority bases its affirmance on the plaintiffs' perceived failure to show substantial likelihood of success on the merits. Based on the above analysis of the legal basis for the plaintiff's claim, I disagree with this conclusion.
 
 VI. Conclusion
 
 61
 The district court incorrectly ruled that it lacked jurisdiction over the plaintiffs' claim under section 1985(3), but correctly concluded that the requirements for the issuance of a preliminary injunction were met. The majority, however, reaches out to make an illogical distinction between women and their reproductive capacities to deny that abortion protesters direct their actions at women and those who would champion their cause. I would grant the plaintiffs' motion for a preliminary injunction barring the defendants from any further "rescues" that would block Dr. Lucero's clinic and deny access to women exercising their constitutionally protected rights. I dissent.
 
 
 
 [1]
 The findings of fact and conclusions of law underlying the district court's order are published at 772 F.Supp. 1193 (N.D.Ala.1991)
 
 
 [2]
 Although plaintiffs originally had filed a motion for a temporary restraining order, the district court's order and findings of fact and conclusions of law treat this motion as an application for preliminary injunction. 772 F.Supp. at 1194
 
 
 [3]
 The complaint also included claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and the following Alabama state law claims: trespass, tortious interference with contractual and business relations, nuisance, false imprisonment, and invasion of privacy
 
 
 [4]
 We need not, and do not, decide whether plaintiffs have established any or all of the elements in a 1985(3) claim other than the second element
 
 
 [5]
 As we agree with the district court that plaintiffs did not meet their burden of persuasion on the class issue, we need not, and do not, address the question of whether plaintiffs would have stated a claim under section 1985(3) had they alleged the animus and class found by the district court
 
 
 [6]
 Our circuit has reserved judgment on this issue. See Faucher v. Rodziewicz, 891 F.2d 864, 871 n. 4 (11th Cir.1990). The circuits are split on this question, compare National Organization for Women v. Operation Rescue, 914 F.2d 582, 585 (4th Cir.1990) ("gender-based animus satisfies the 'purpose' element of § 1985(3)"), cert. granted sub nom. Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); New York State National Organization for Women v. Terry, 886 F.2d 1339, 1359 (2d Cir.1989) (a class of women protected by § 1985(3)) with Deubert v. Gulf Federal Savings Bank, 820 F.2d 754, 757 (5th Cir.1987) (§ 1985(3) only recognizes racial animus), and the Supreme Court has granted certiorari to consider it, Bray, --- U.S. at ----, 111 S.Ct. at 1070, 112 L.Ed.2d at 1176
 
 
 [7]
 This is not to say that the mere presence of men in a group removes that group from the protection of section 1985(3). As the Supreme Court has made clear in Scott, section 1985(3) was intended to protect a class of "Negroes and those who championed their cause." Id. 463 U.S. at 836, 103 S.Ct. at 3360. By analogy, and assuming arguendo that section 1985(3) reaches actions triggered by a gender-based animus, section 1985(3) would also protect a class of women and those who champion their cause. In this case, the class might fit under section 1985(3), if we assume that the doctors, nurses, etc. at Dr. Lucero's clinic can be said to champion women's cause. What is missing is any indication that the gender of the pregnant women represents the source of defendants' animus
 
 
 [1]
 See NOW v. Operation Rescue, 914 F.2d 582 (4th Cir.1990), cert. granted sub nom. Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); N.Y. Nat'l Org. for Women v. Terry, 886 F.2d 1339 (2d Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); Volk v. Coler, 845 F.2d 1422 (7th Cir.1988); Stathos v. Bowden, 728 F.2d 15 (1st Cir.1984); Novotny v. Great Am. Fed. Savings & Loan Ass'n, 584 F.2d 1235 (3d Cir.1978), vacated on other grounds, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); Life Ins. Co. of N. Am. v. Reichardt, 591 F.2d 499 (9th Cir.1979); Conroy v. Conroy, 575 F.2d 175 (8th Cir.1978)
 But see Mississippi Women's Medical Clinic v. McMillan, 866 F.2d 788 (5th Cir.1989) (rejecting coverage under § 1985(3) of a class defined as "women of childbearing age who seek medical attention from MWMC," 866 F.2d at 794, a description the court considered "so under-inclusive as to mischaracterize the dispute").
 This circuit expressly left the question open in Faucher v. Rodziewicz, 891 F.2d 864, 871 n. 4 (11th Cir.1990).
 Other cases holding that § 1985(3) applies to women include Women's Health Care Services v. Operation Rescue, 773 F.Supp. 258 (D.Kan.1991); NOW v. Operation Rescue, 747 F.Supp. 760 (D.D.C.1990); Southwestern Medical Clinics of Nevada, Inc. v. Operation Rescue, 744 F.Supp. 230 (D.Nev.1989); Roe v. Operation Rescue, 710 F.Supp. 577 (E.D.Pa.1989), aff'd on other grounds, 919 F.2d 857 (3d Cir.1990); Portland Feminist Women's Health Center v. Advocates for Life Inc., 712 F.Supp. 165 (D.Ore.) aff'd as modified, 859 F.2d 681 (9th Cir.1988).
 But see Nat'l Abortion Fed. v. Operation Rescue, 721 F.Supp. 1168 (C.D.Cal.1989).
 
 
 [2]
 Further, the passage from the district court opinion that the majority quotes appears in a footnote midway through the section of the opinion entitled "Conclusions of Law."
 
 
 [3]
 See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). As discussed infra, because the defendants have violated the plaintiffs' right to interstate travel and have established a claim under § 1985(3), I do not reach the issue of whether or not the right to abortion is protected under § 1985(3) or whether plaintiffs could maintain such a claim
 
 
 [4]
 Geduldig held that discrimination on the basis of pregnancy was not discrimination on the basis of sex under the Constitution