Dewayne **DENNEY**, Harold Pinson, Robert McGee, and Edgar Webb, Plaintiffs,

v.

**CITY OF ALBANY**, a Municipal Corporation, and Janice Allen, Individually and in Her capacity as Manager for the City of Albany, Henry Fields, Individually and in his Capacity as Fire Chief for the City of Albany, Defendants.

No. 1:97–CV–99–3(WDO).

United States District Court,
M.D. Georgia,
Albany–Americus Division.

Sept. 29, 1999.

Eugene C. Black, Jr., Albany GA, for plaintiffs.

Al Grieshaber, Jr., Albany, GA, for defendants.

## ORDER

OWENS, District Judge.

Before the Court are Defendants', City of Albany, and Janice Allen and Henry Fields, in their official capacities, Motion for Summary Judgment [Tab # 69] and Defendants', Janice Allen and Henry Fields, in their individual capacities, Motion for Summary Judgment [Tab # 73]. Having carefully considered the motion, the related caselaw and statutes, and the file as a whole, the Court enters the following order.

### I. Facts

Plaintiffs DeWayne Denney, Harold Pinson, Robert McGee, and Edgar Webb are firefighters employed by the City of Albany Fire Department. Defendant City of Albany ("Albany") is a municipal corporation. Defendant Janice Allen Jackson ("Jackson") is sued in her capacity as City Manager for the City of Albany, and in her individual capacity. Defendant Henry

Fields ("Fields") is sued in his capacity as Fire Chief for the City of Albany, and in his individual capacity.

Plaintiffs were passed over for promotions in 1995 and 1996. Plaintiffs allege that the above-named defendants discriminated against them in denying them the promotions.

The City of Albany's hiring policy (amended in 1995) specifically required the Fire Department to "be operated in compliance with Title VII of the Civil Rights Act of 1964 and the City of Albany, Georgia's Affirmative Action Plan." Albany's Affirmative Action Plan states, in pertinent part: the City of Albany shall recruit, hire, upgrade, train, promote, and administer personnel actions in all job classifications without regard to race, color, religion, sex, national origin, age or disability. The promotion policy states that "every effort will be made to ensure that ... everyone, regardless of race ... will receive fair treatment during the process."

Under the 1995 policy, promotion applicants took a written examination, completed an assessment center, and had an oral examination. Applicants scoring at least a 70 on this 100 point qualification exercise were considered qualified for promotion to the Lieutenant position. Once this process resulted in a pool of qualified applicants, Chief Fields had the authority to make the final promotional decision.

In November 1995, the Fire Department conducted a qualification exercise to identify qualified applicants for vacant Lieutenant positions. Twenty-three applicants completed the examination, and twenty-one were placed in the pool of qualified applicants, having scored 70 or better.

Plaintiff Denney, who began working for the Albany Fire Department in 1978, qualified for consideration for promotion by scoring 77 (however, Denney argues his score should have been 86), Denney, who had the lowest score of all applicants (for the 1995 promotion), does not contend that his low score was the result of race discrimination. Rather, Denney contends that he was denied the promotion because

he wrote a check [to others involved in the prior litigation but not to Chief Fields].

Plaintiff Pinson, who began working in the Albany Fire Department in 1973, qualified for consideration for promotion by scoring 80.5 (however, Pinson argues his score should have been 83.5). Pinson, who was disciplined on at least eight occasions, does not contest the Harris promotion as discriminatory. His only claim of discrimination arises out of the promotion of Hayslip.

Plaintiff McGee, who began working in the Albany Fire Department in 1978, qualified for consideration for promotion by scoring 73.5. McGee claims that he should have been given the promotions earned by Harris and Hayslip, though he filed a grievance only in connection with the promotion of Hayslip.

Plaintiff Webb qualified for consideration for promotion by scoring 80.5 (however, Webb argues he should have scored 83.5). At the time of selection, Webb had been disciplined on at least three occasions.

In 1995, Chief Fields selected Wesley Pantone (white), Tommy Anderson (white), Gregory Maze (black), and James Pratt (black) from the qualified list of 1995 for promotions to Lieutenant. Pantone scored 85.5 on the qualifying exams, Anderson scored 95, Maze scored 85, and Pratt scored 85. Plaintiffs do not contest these promotions as being discriminatory.

In 1996, Chief Fields selected Willie Harris to fill an open Lieutenant position. Harris qualified by achieving a total score of 80.5 (however, based on plaintiffs' corrected scoring schedule, Harris lost two points due to the rounding down of assessment scores, he should have received a total score of 87 and not 80.5). Harris was a 16–year veteran of the fire department and an 8–year veteran as an AOE. On his 1994 annual performance evaluation, the following review appeared:

Harris spends a lot of his free time studying his job as an A.O.E. He never

refuses to do anything required of him. AOE W.R. Harris has proven to be a credit to the Albany Fire Department and the City of Albany ... AOE Harris has a very positive attitude about the Albany Fire Department and his job. W.R. Harris is always ready to assist anyone and does so without any hesitation. Not only does Harris have this attitude on the job, it also reflects over into his everyday life.

In selecting Harris for the position, Chief Fields considered the following factors: Harris' demonstrated leadership, maturity, interpersonal skills and a willingness to support management and its policies. Among the qualified applicants for promotion, Chief Fields considered Harris to possess the greatest level of maturity, leadership skills, interpersonal skills and willingness to support fire department and city management and policies [1].

In September 1996, Albert Hayslip was promoted to fill a Lieutenant vacancy. Hayslip qualified for promotion by scoring an 80 .5 (however, under plaintiffs' corrected scoring schedule, Hayslip was graded two points higher on the interview than he should have been; his proper score should have been 78.5 instead of 80.5). Hayslip was a 10–year veteran firefighter with outstanding performance evaluations. Hayslip also brought years of current experience as a sergeant in the Army Reserve, had an ability to carry out instructions, a level of maturity, and an understanding of leadership that Fields believed made Hayslip the best candidate for the lieutenant position.

Since plaintiffs all received qualifying scores on the three-part examination, they were considered for these Lieutenant promotions. While Chief Fields considered each of these candidates qualified, he felt that Harris and Hayslip had the maturity, leadership, interpersonal skills, and will-ingness to support management and Fire Department policies, which he considered necessary for the positions.

In 1996, Chief Fields selected Kelly Harcrow (white) and James Ambrose (white) for vacant Lieutenant positions from the 1995 qualified list. Plaintiffs do not contend that these promotions were discriminatory.

## II. Contentions

Defendants assert that they are entitled to judgment as a matter of law because 1) Plaintiffs have not established a prima facie case of disparate impact under Title VII; 2) Plaintiffs have failed to establish a prima facie case of disparate treatment under Title VII; 3) suits against defendants in their individual capacities are not cognizable under Title VII; 4) Plaintiffs have not established a viable § 1981 claim; 5) Plaintiffs' Conspiracy claims under § 1985 lack merit; and 6) Plaintiffs' claims under § 1986 are time barred or precluded. Plaintiffs argue that material issues of fact remain on his claims which should preclude summary judgment.

## III. Discussion

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995). The movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving

---

**1.** Plaintiffs did not file a grievance with respect to the Harris promotion. Additionally, the individual plaintiffs' positions are somewhat incongruous regarding the Harris promotion. Nonetheless, plaintiffs' complaint in the district court included facts related to the Harris promotion. Therefore, for the sake of safety, the Court shall address the Harris promotion in this Order.

party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), genuine issues of material fact necessitating a trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

## B. Claims

### 1. Disparate Impact

█ For a claim of disparate impact discrimination, Plaintiffs must establish a prima facie case by showing that Defendants have employed a facially neutral employment practice that has had a significantly discriminatory impact. *Hill v. Seaboard Line R. Co.,* 885 F.2d 804, 811 (11th Cir.1989); *Stephen v. PGA Sheraton Resort, Ltd.,* 873 F.2d 276, 279 (11th Cir. 1989). Plaintiffs must then show that the application of that specific employment practice caused the disparity and that he was adversely impacted by the practice. *Id.*

#### a. Discriminatory impact

█ In order to establish the first element of his prima facie case, Plaintiffs must demonstrate that the qualification process had a "significant discriminatory impact" on white candidates. This element must be established by statistical evidence indicating that a particular employment practice had a disproportionate effect on a protected group. *MacPherson v. University of Montevallo,* 922 F.2d 766, 771 (11th Cir.1991).

Plaintiffs rely solely on the analysis of Dr. Cook to establish the disparity. Dr. Cook limited his analysis to only the qualification process. He issued two reports, one on June 5, 1997, and another on June 25, 1997. Dr. Cook, comparing the scores of white candidates with those of blacks, found that whites scored higher than

blacks on the written tests, that blacks scored almost two points, on average, higher than whites on the oral tests, and that generally speaking, the higher a white candidate scored on the objective written test and on the objective assessment center, the lower the same white candidate scored on the subjective interview with Chief Fields. From these comparisons, Dr. Cook stated that, for both white and black applicants, there is a positive correlation between the written and interview tests, although he found that the correlation was stronger for black applicants than for whites. However, Dr. Cook also found that there was "no significant difference" between the total score attained by black applicants and those attained by white applicants.

Additionally, Plaintiffs allege that the following miscalculations took place. Plaintiff Denney should have received a score of 15 not 13 on the oral interview. Denney's score was also rounded down instead of up. Overall, Denney's total score should have been 86 instead of 77.

Plaintiff Pinson lost three points on the assessment center scoring due to being averaged down instead of up. Pinson's proper score should have been 83.5 instead of 80.5.

Plaintiff McGee's scores were proper at 73.5 percent.

Plaintiff Webb lost 1 point on the interview due to improper grading; he lost 2 points on the assessment center due to the fact that his scores were rounded down and not rounded up. The net effect is that Mr. Webb should have received a score of 83.5 instead of 80.5.

While plaintiffs argue that they have presented a prima facie case by showing the statistical anomalies and scoring errors, this court does not believe these errors had a significantly discriminatory impact. However, assuming a discriminatory impact existed, plaintiffs must show that the discriminatory impact caused his denied promotion.

#### b. Adverse Impact on Plaintiff

In order to satisfy the second prong of the disparate impact test, plaintiffs must show that they suffered the loss of an employment benefit as a result of the qualification process. Even assuming Dr. Cook's statistics have established a pattern of discrimination, plaintiffs must still establish that they have been denied an ... employment benefit ... in order to recover for particularized injuries. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1132 (11th Cir.1984); *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1143 (11th Cir.1983). "Even if the proffered statistical evidence were to establish a pattern and practice of discrimination at [employer], the failure of the individual plaintiffs to demonstrate that they specifically, individually suffered an adverse employment decision rooted in discriminatory motives renders the statistical evidence insufficient to support the plaintiffs' individual Title VII claims." *Washington v. Brown & Williamson Tobacco Corp.*, 756 F.Supp. 1547, 1566 (M.D.Ga.1991) (Owens, J.).

Plaintiffs did not suffer the loss of an employment benefit as a result of the qualification process. The only alleged "statistical anamolies" took place during the process of determining who was qualified. Under the original scoring and plaintiffs' proposed scoring, plaintiffs, Harris and Hayslip were all deemed qualified for promotion. The allegedly discriminatory oral examination and rounding errors played no role whatsoever after the qualification process was completed. Fields, after receiving a list of qualified candidates (including all plaintiffs), found that Harris and Hayslip were more qualified based on job-specific subjective criteria (leadership, maturity, interpersonal skills and a willingness to support management and its policies). Accordingly, the alleged scoring disparities did not "cause" the denied promotion. Rather, Fields' decision that Harris and Hayslip were the most qualified out of the qualified candidates "caused" plaintiffs to be passed over for promotion.

Therefore, plaintiffs cannot establish a prima facie case of disparate impact.

#### 2. Disparate Treatment

To prevail on a disparate treatment claim under Title VII, Plaintiffs must first establish a prima facie case of discrimination by proving 1) they are members of a protected class; 2) they were qualified for the position; 3) they each suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated more favorably. *See, e.g., Jones v. Bessemer Carraway Med.Ctr.*, 137 F.3d 1306, 1310 (11th Cir.), *modified in part on other grounds*, 151 F.3d 1321 (11th Cir.1998); *Armstrong v. Flowers Hosp.*, 33 F.3d 1308, 1313 (11th Cir.1994). If a prima facie case is established the burden then shifts to the defendant[s] to "articulate a legitimate, non-discriminatory reason for the [adverse employment action]." *Jones*, at 1310; *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Finally, the plaintiffs then may prove, by the preponderance of the evidence, that the proffered reason was pretextual. *Id.; citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

#### a. Legitimate Non-discriminatory Reasons

Assuming plaintiffs have established a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for not promoting plaintiffs. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. An employer may refuse to promote an applicant for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).

Harris, with a total score of 80.5 (by plaintiffs' calculation 87), was qualified for the promotion. Chief Fields testified

that he considered the following factors in selecting Harris for the position: Harris' demonstrated leadership, maturity, interpersonal skills and a willingness to support management and its policies. Among the qualified applicants for promotion, Chief Fields considered Harris to possess the greatest level of maturity, leadership skills, interpersonal skills and willingness to support the fire department and city management and policies.

Likewise, Hayslip, with a score of 80.5 (78.5 by plaintiffs' scoring), was qualified for the promotion. When considering the qualified applicants to fill the Lieutenant/Training position, Chief Fields narrowed the field to Hayslip, Harcrow and Pinson. In addition to his own observations, Chief Fields sought the input of several subordinates before deciding that Hayslip was the best candidate. Chief Fields testified that he ultimately selected Hayslip over Harcrow because of these recommendations and because he felt that Hayslip showed better leadership potential.

### b. Pretext

■ Since Defendants have satisfied their burden of articulating legitimate, nondiscriminatory reasons (Harris and Hayslip were the best qualified candidates) for the promotions, the burden shifts to plaintiffs to show that Defendants' reasons are merely pretextual. *Jones*, 137 F.3d at 1310. The employee must "present significantly probative evidence that the articulated rationale is pretextual." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir.1989), *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996).

Plaintiffs attempt to show pretext in five ways: 1) there is a statistical inference that the qualification process was biased; 2) there was subjectivity in the promotion process; 3) plaintiffs were objectively more qualified than Harris and Hayslip; 4) the existence of the City's Affirmative Action Plan gives rise to an inference of discrimination; and 5) a finding of discrimination in *Shealy* shows pretext in this case.

### 1. Statistical Inference

■ Plaintiffs' only showings of statistical inferences that the qualification process was biased are that whites received, on average, two points less on the oral interview portion of the process and that, generally speaking, the higher a white candidate scored on the objective written test and on the objective assessment center, the lower the same white candidate scored on the subjective interview with Chief Fields. However, plaintiffs' expert also surmised that whites scored higher on the written portion of the exam. More importantly, plaintiffs' expert determined that there was no significant statistical disparity between blacks and whites in the total score.

Plaintiffs also argue that numerous errors were made in grading the answers to certain questions and in rounding scores. Specifically, Denney argues he should have received a score of 15 not 13 on the oral interview and 48 not 41 on the assessment center. Accordingly, Denney's total score should have been 86 instead of 77. Pinson argues he should have received an additional three points on the assessment center scoring due to being averaged down instead of averaged up. Pinson argues his proper score should have been 83.5 instead of 80.5. Plaintiff McGee's scores were proper at 73.5. Webb argues he lost 1 point on the interview due to improper grading and 2 points on the assessment center due to the fact that his scores were rounded down and not rounded up. Webb argues that the net effect is that he should have received a score of 83.5 instead of merely 80.5. However, plaintiffs' research also shows that one of the two individuals whom were allegedly favored (Harris) was also "erroneously" given a lower score than was warranted. By Plaintiffs' calculation, Harris should have received a total score of 87 instead of 80.5. More importantly, Plaintiffs have presented absolutely no evidence that the alleged "misgradings" were the result of racial discrimination.

Nonetheless, after correcting for the alleged "discriminatory grading", assuming it took place, the changes would have had no impact on the final decision. First, it is undisputed that the only score that the chief considered in making his final decision was the total score (where there was not even an "alleged" disparity). Under either the plaintiffs' proffered scoring system or the actual scoring system, plaintiffs were deemed qualified. Once plaintiffs "qualified" for consideration, they were evaluated based on the chief's criteria for the position and the recommendations of other board members. The chief determined that individuals other than plaintiffs were more qualified. Plaintiffs' statistical evidence does not create a reasonable inference that the criteria used by Fields were pretext for race discrimination.

### 2. Subjectivity

The Eleventh Circuit has long held that the presence of subjectivity is not probative of discrimination. *E.g., Allison v. Western Union Tel. Co.*, 680 F.2d 1318, 1322 (11th Cir.1982). Plaintiffs do not challenge the results of Dr. Austin's study of the Lieutenant position, which establishes that subjective factors such as supervisory skills (leadership), interpersonal relations, problem analysis, and oral and written communication skills are required to perform the duties of the position. Furthermore, plaintiffs do not cite any evidence tending to show that Harris and Hayslip did not possess these attributes. In fact, plaintiffs do not allege that Harris and Hayslip were not qualified for their respective positions.

Testing to determine whether an applicant was qualified for promotion was irrelevant to the final selection for promotion. The qualification process was merely to determine whether the applicant possessed the minimum level of competency; it was not designed to determine who was most qualified.

All of the plaintiffs and Harris and Hayslip were qualified for promotion. An employer is not prohibited from establishing job-related subjective criteria in an effort to choose the best candidate from a list of qualified candidates. Here, plaintiffs have not shown that the subjective criteria used by Chief Fields was pretextual.

### 3. Objective Qualifications

Plaintiffs argue that they have shown pretext because they were more qualified than Hayslip and at least as qualified as Harris. Specifically, Denney asserts that he is better qualified than Hayslip because he has more time on the job, more firefighting and driving skills, and had better scores on the written exam and assessment exercise. Pinson asserts that he is better qualified than Hayslip for the training position because he is certified as an instructor for various courses such as responder, rescue specialist, etc. Webb argues that he is more qualified than Hayslip because of his experience and the fact that his composite score was higher than Hayslip's. However, "the inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir.1997). Since Chief Fields felt that Harris and Hayslip were the most qualified applicants available for promotion at the time that they were promoted, Plaintiffs cannot support a claim of pretext by alleging that they were more qualified. *Id.*

Moreover, it is well-settled that "Title VII does not require any employer to hire or promote the most qualified applicant." *Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir.1988). As the Eleventh Circuit has explained, "an employer's decision to promote [one qualified employee rather than another] may seem to some to be bad business judgment, and to others to be good business judgment, but Federal Courts do not sit to second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997). The question for the Court to resolve is not whether defendants used the best possible business judgment,

but whether [defendants] discriminated against Plaintiff[s] because of their race. *Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) ("Federal courts do not sit as a super-personnel department that reexamines any entity's business decisions . . ."). Plaintiffs have not presented evidence establishing that Defendants' decisions were based on race. Therefore, Plaintiffs' bare claims that they were more qualified than Harris and Hayslip are not sufficient to show that Defendants' legitimate nondiscriminatory reasons were mere pretext for discrimination. *Elrod*, 939 F.2d at 1470.

### 4. Affirmative Action Plan

■ Plaintiffs' reliance on the City's affirmative action plan to establish pretext is misplaced. A review of the plan reveals that it strictly prohibits race as a factor in employment decisions. According to the plan, "The City of Albany shall hire, upgrade, train, promote, and administer personnel actions in all job classifications without regard to race, color, religion, sex, national origin, age or disability. While the plan seeks to expand the City's pool of qualified applicants, there is absolutely nothing in the plan that provides for the selection of applicants on the basis of their race or color. Accordingly, the plan does not evidence pretext." *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1571 (11th Cir.1994) ("race-neutral efforts" of affirmative action such as encouraging applications from blacks and waiving application fees did not run afoul of anti-discrimination laws.)

### 5. Shealy Case

Plaintiffs' reliance on *Shealy, et al v. the City of Albany, et al*, is also misplaced. The *Shealy* decision was rendered in 1997, almost two years after the promotions in question, and involved different applicants, a different position, and a different selection process. Plaintiffs' apparent contention that the *Shealy* decision suffices to raise an inference of discrimination with respect to promotions in the Albany Fire Department is nonsensical. To establish

pretext, Plaintiffs must offer evidence to rebut Defendants' showing with respect to the Harris and Hayslip promotions, which are the promotions at issue in this case. Plaintiffs have failed to do so.

### 3. Individual capacity suits under Title VII

■ Plaintiffs concede, in their Response to the individual defendants' Motion for Summary Judgment, that they do not wish to pursue Title VII claims against Jackson or Fields, in their individual capacities. It is well established that individual defendants cannot be held liable for damages under Title VII. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Clark v. City of Macon, Ga.*, 860 F.Supp. 1545, 1550 (M.D.Ga.1994). *Accord Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994); *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Accordingly, plaintiffs' claim against Defendants Janice Allen Jackson and Henry Fields, in their individual capacities are not cognizable.

### 4. Section 1981

■ Plaintiffs' § 1981 claim should be dismissed for the same reasons that their Title VII claims are subject to summary judgment. *Smith v. Papp Clinic*, 808 F.2d 1449, 1451 (11th Cir.1987); *Waldemar v. American Cancer Soc'y*, 971 F.Supp. 547, 553 (N.D.Ga.1996) ("Because . . . race discrimination claims under 42 U.S.C. § 1981 follow the same analysis as Title VII claims, the Court treats both claims together"). In addition, plaintiffs' § 1981 claim should be dismissed because § 1981 provides no cause of action against state actors. In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court declined to recognize an implied cause of action under Section 1981 against state actors. The Court held that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against

a state actor." *Id.* at 735, 109 S.Ct. 2702. *See also Reynolds v. Glynn County Bd. of Educ.,* 968 F.Supp. 696, 707 (S.D.Ga.1996) *See also Batchelor v. City of Griffin,* No. 3:97–cv–43–JTC (N.D.Ga. Mar. 3, 1999). Accordingly, since plaintiffs failed to assert a § 1983 claim, their § 1981 claim must be dismissed.

### 5. Section 1985

■ Plaintiffs have also claimed that the change and subsequent amendment of the promotion policy by Defendants constitutes a "de facto conspiracy" to deprive Plaintiffs of their equal protection rights under the Constitution, pursuant to 42 U.S.C. § 1985 and § 1986.

■ "A violation of § 1985 requires: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627 (11th Cir.1992). In addition, the ability to show the "invidiously discriminatory animus" intent is a significant hurdle for section 1985(3) plaintiff. *Burrell v. Bd. of Trustees,* 970 F.2d 785, 794 (11th Cir.1992).

Since Plaintiffs' complaint does not allege that any person or entity outside the City of Albany participated in any conspiracy, Plaintiffs have failed to establish a conspiracy, a required element of a § 1985 claim. *Lucero,* 954 F.2d at 627; *Mitchell,* 954 F.Supp. at 1575. ("Plaintiff cannot demonstrate a conspiracy required to hold defendants liable under § 1985(3) because a corporation cannot conspire with its own employees.")

■ Finally, § 1985 creates no substantive rights, but prohibits conspiracies to deprive a person of rights created elsewhere. *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *Stevens v. Tillman,* 855 F.2d 394 (7th Cir.

1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). As the underlying claims (in this case, race discrimination) are without merit, "there can be no conspiracy where there is no underlying act." *Mays,* 928 F.Supp. at 1561.

### 6. Section § 1986

Since the Defendants are entitled to summary judgment on plaintiffs' § 1985 claim, Defendants are also entitled to summary judgment on their § 1986 claim. Alternatively, plaintiffs do not refute that their § 1986 claim is time barred.

## IV. Conclusion

Plaintiffs have failed to raise a genuine issue of material fact on any of their claims. Accordingly, Defendants', City of Albany, and Janice Allen and Henry Fields, in their official capacities, Motion for Summary Judgment [Tab # 69] is **HEREBY GRANTED IN ITS ENTIRETY.** Defendants', Janice Allen and Henry Fields, in their individual capacities, Motion for Summary Judgment [Tab # 73] is also **HEREBY GRANTED IN ITS ENTIRETY.**