[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-14162

_____

D. C. Docket No. 97-00099 CV-3-WDO-1

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**APR 11, 2001**
**THOMAS K. KAHN**
**CLERK**

DEWAYNE DENNEY, HAROLD PINSON, et al.,

Plaintiffs-Appellants,

versus

THE CITY OF ALBANY, a Municipal
Corporation, JANICE ALLEN JACKSON,
Individually and in her capacity as Manager
for the City of Albany, et al.,

Defendants-Appellees.

_____

No. 99-14163

_____

D.C. Docket No. 97-00072-CV-3-WDO-1

DAVID N. POTTER,

Plaintiff-Appellant,

versus

THE CITY OF ALBANY, a Municipal
Corporation, JANICE ALLEN, Individually and

in her capacity as Manager for the City of Albany, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____
**(April 11, 2001)**

Before BLACK and MARCUS, Circuit Judges, and HANCOCK[*], District Judge.

MARCUS, Circuit Judge:

Plaintiffs in these consolidated appeals are white firefighters in the City of

Albany, Georgia who contend that the Defendants -- the City of Albany and two

City officials -- impermissibly considered race in denying them promotions to the

position of lieutenant.  The district court granted summary judgment in favor of the

Defendants in both cases, finding that the Plaintiffs failed to introduce sufficient

evidence of discriminatory intent.  Because the district court did not err in rejecting

Plaintiffs' Title VII disparate treatment and § 1985(2) conspiracy claims, the only

rulings as to which appellate review has properly been sought, we affirm.

I.

Appellants are five white firefighters employed by the City of Albany Fire

Department:  Dewayne Denney, Harold Pinson, Robert McGee, Edgar Webb, and

_____

[*]Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama,
sitting by designation.

David Potter. The first four Appellants are Plaintiffs in one lawsuit (appeal no. 99-14162); Potter is the single Plaintiff in a second lawsuit (appeal no. 99-14163). The Defendants in both cases are the City; Henry Fields, the City's black Fire Chief; and Janice Allen Jackson, the black City Manager.

As discussed below, Plaintiffs allege that the Defendants, through Chief Fields, discriminated against them by passing them over for two promotions to lieutenant given instead to black firefighters Willie Harris and Albert Hayslip. The five Plaintiffs are similarly situated except for minor variations in their personal qualifications, and all make the same factual allegations about Defendants' conduct.

The relevant facts are largely undisputed. As a result of litigation brought by black firefighters in the early 1970s, the City's Fire Department ("Department") began to use race as a factor in its promotion decisions. In 1995, the district court supervising the Department's promotion process ended the requirement that race be used as a factor in promotions. Thereafter, the City adopted a revised promotion policy. That policy required the Fire Department to "be operated in compliance with Title VII of the Civil Rights Act of 1964 and the City of Albany, Georgia's Affirmative Action Plan." The City's Affirmative Action Plan ("AA Plan") states in pertinent part: "[T]he City of Albany shall recruit, hire, upgrade,

3

train, promote, and administer personnel actions in all job classifications without regard to race, color, religion, sex, national origin, age or disability." The promotion policy also states that "every effort will be made to ensure that . . . everyone, regardless of race . . . will receive fair treatment during the process." The City's AA Plan does set percentage goals for the representation of blacks (among other minorities) in certain job classifications; contrary to Plaintiffs' suggestion, however, there is no indication that these goals are applied as rigid "quotas" or that race is a permissible factor in the actual promotion decisions.

Under the revised policy as it operated during the relevant time frame, firefighters applying for promotion to lieutenant took a written examination, completed a skills assessment center, and had an oral interview exam with Chief Fields. The written exam counted for 30% of the overall score; the assessment center counted for 50%; and the interview exam counted for 20%. Applicants scoring at least a 70 out of a possible 100 on this three-step qualification exercise were considered qualified for promotion to the lieutenant position. Once this process resulted in a pool of qualified applicants, Chief Fields had the authority to make the final promotional decision. In making the promotion decisions at issue in this case, Chief Fields did not consider the relative qualification exercise scores of the applicants in the pool.

Chief Fields's allegedly discriminatory hiring practices have been challenged once before. In that instance, (the "Shealy litigation"), the district court -- the same judge presiding over this case -- found after a bench trial that the City was liable for discrimination against whites in connection with a 1994 promotion by Chief Fields for the position of Battalion Chief. Chief Fields testified in that case that his decision was not motivated by race; the district court found otherwise. In an unpublished opinion dated March 10, 2000, we affirmed the district court's finding of Title VII liability, although we reversed on damages. We held that there was "ample evidence" to support the district court's determination of liability, and that its factual findings were not clearly erroneous. Shealy v. City of Albany, No. 98-8212 (11th Cir. Mar. 10, 2000), at 4.

Returning to the matter at hand, in November 1995, the Fire Department conducted a qualification exercise to identify qualified applicants for vacant lieutenant positions. Twenty-three applicants completed the examination, and twenty-one were placed in the pool of qualified applicants, having scored 70 or better. All of the Plaintiffs qualified for consideration for promotion, as did Harris and Hayslip. Their scores were: Potter 87; Harris, Hayslip, Pinson, and Webb 80.5; Denney 77; and McGee 73.5. It later was determined that the scores for these candidates were mistabulated due to inconsistent rounding-off of numbers by Chief

5

Fields.[1]  As corrected, the scores should have been:  Potter 94; Harris 87; Denney 86; Pinson and Webb 83.5; Hayslip 78.5; and McGee 73.5.

Qualified applicants were selected for promotion to lieutenant whenever a lieutenant opening occurred.  Chief Fields testified that, in making the promotions, he considered the following factors: demonstrated leadership, maturity, interpersonal skills, and a willingness to support management and its policies.  In 1995, Chief Fields selected Wesley Pantone (white), Tommy Anderson (white), Gregory Maze (black), and James Pratt (black) from the qualified list for promotions to lieutenant.[2]  None of these promotions are contested as discriminatory by the Plaintiffs.

In April 1996, Chief Fields selected Harris to fill an open lieutenant position. Harris was a 16-year veteran of the Fire Department and had served eight years as an Apparatus Operations Engineer ("AOE").  Harris's annual performance evaluation was extremely favorable:

> Harris spends a lot of his free time studying his job as an A.O.E.  He
> never refuses to do anything required of him. AOE W.R. Harris has

---

[1]Plaintiffs do not argue that the miscalculations were themselves discriminatory acts or constitute probative evidence of Fields's discriminatory intent. Indeed, although Hayslip's corrected score dropped 2.0 points. Harris's score rose a full 7.0 points, belying any suggestion that the errors were intended to prejudice white candidates.

[2]Pantone scored 85.5 on the qualification exercise, Anderson scored 95, Maze scored 85, and Pratt scored 85.

6

proven to be a credit to the Albany Fire Department and the City of Albany. . . . AOE Harris has a very positive attitude about the Albany Fire Department and his job. W.R. Harris is always ready to assist anyone and does so without any hesitation. Not only does Harris have this attitude on the job, it also reflects over into his everyday life.

Among the qualified applicants for promotion, Chief Fields considered Harris to possess the greatest level of maturity, leadership skills, interpersonal skills, and willingness to support Departmental and City management policies.

In September 1996, Hayslip was likewise promoted to fill a lieutenant vacancy. Hayslip was a 10-year veteran firefighter with outstanding performance evaluations. Hayslip also brought years of experience as a sergeant in the Army Reserve, and had an ability to carry out instructions, a level of maturity, and an understanding of leadership that Fields says led him to conclude that Hayslip was the best available candidate for the lieutenant opening. As before, Chief Fields considered the Plaintiffs for the opening, but thought them less qualified in the factors that he considered important.

Subsequently in 1996, Chief Fields selected Kelly Harcrow (white) and James Ambrose (white) for vacant lieutenant positions from the qualified candidate pool that included Plaintiffs. Thus, from the pool, Chief Fields selected at least four whites, as well as four blacks, for promotion.

Plaintiffs filed their lawsuits on May 15 (Potter) and June 6 (Denney, et al.), 1997. In their complaints, Plaintiffs sought relief for disparate treatment and disparate impact under Title VII, for discrimination in violation of 42 U.S.C. § 1981, and for conspiracy in violation of 42 U.S.C. §§ 1985 and 1986. Plaintiffs sued Fields and Jackson in their individual as well as official capacities. As remedies, Plaintiffs requested damages as well as an injunction compelling the City to use a more objective system for awarding promotions that (in Plaintiffs' words) would permit the most qualified candidates to be selected.

After discovery, Defendants moved for summary judgment. Plaintiffs opposed the motion, but, as discussed below, at one point did not contest -- indeed, they concurred in -- Defendants' asserted "undisputed fact" that Chief Fields did not consider race in making the promotion decisions. In comprehensive, virtually identical 23-page orders dated September 24 (Potter) and 29 (Denney, et al.), 1999, the district court granted summary judgment in Defendants' favor, and subsequently entered judgment for the Defendants. Potter v. City of Albany, 68 F. Supp. 2d 1360 (M.D. Ga. 1999); Denney v. City of Albany, 68 F. Supp. 2d 1369 (M.D. Ga. 1999).[3]

_____

[3]In the discussion that follows, the appeals will be spoken of as arising in a single case with respect to a single district court order.

8

In its orders, the district court rejected each of Plaintiffs' theories of liability. First, it rejected Plaintiffs' argument that the qualification exercise process had a disparate impact on non-blacks in violation of Title VII. The court reasoned that Plaintiffs failed to show how the three-step process had any impact on their non-selection, given that all of the Plaintiffs made it past that stage and given the undisputed evidence that the qualification exercise scores were not considered by Chief Fields in making the challenged promotion decisions. Second, the district court found that Plaintiffs did not establish a triable issue on their disparate treatment claim under Title VII. In particular, the court found that the Plaintiffs' evidence did not provide a sufficient basis for a jury to conclude that the legitimate, non-discriminatory reason proffered by the Defendants for the selections of Harris and Hayslip -- namely, that these candidates were more qualified -- was a pretext for discrimination.

As the court saw it, Plaintiffs attempted to show pretext in five ways: "1) there is a statistical inference that the qualification process was biased; 2) there was subjectivity in the promotion process; 3) plaintiffs were objectively more qualified than Harris and Hayslip; 4) the existence of the City's Affirmative Action Plan gives rise to an inference of discrimination; and 5) a finding of discrimination in Shealy shows pretext in this case." 68 F. Supp. 2d at 1377. With respect to the

9

statistical evidence, the court emphasized that even though Plaintiffs showed that "whites received, on average, two points less on the oral interview portion of the process and that, generally speaking, the higher a white candidate scored on the objective written test and on the objective assessment center, the lower the same white candidate scored on the subjective interview with Chief Fields," the critical fact was that there existed "no significant statistical disparity between blacks and whites in the total score." Id. at 1377-78. With respect to the use of subjectivity in the promotion process, the district court reasoned that under our precedent "'the presence of subjectivity is not probative of discrimination,'" id. at 1378 (quoting Allison v. Western Union Tel. Co., 680 F.2d 1318, 1322 (11th Cir. 1982)), and that "subjective factors such as supervisory skills (leadership), interpersonal relations, problem analysis, and oral and written communication skills are required to perform the duties of the [lieutenant] position." 68 F. Supp. 2d at 1378.

With respect to the Plaintiffs' qualifications relative to those of Harris and Hayslip, the district court explained that an employer is not required to choose the "most" qualified candidate for a position, and that "Plaintiffs' bare claims that they were more qualified than Harris and Hayslip are not sufficient to show that Defendants' legitimate nondiscriminatory reasons were mere pretext for discrimination." Id. at 1379. With respect to the implications of the City's AA

10

Plan, the court observed that the plan prohibited, rather than permitted, discriminatory promotion practices. Finally, with respect to the Shealy litigation, the court explained as follows:

> Plaintiffs' reliance on Shealy [is] misplaced. The Shealy decision was rendered in 1997, almost two years after the promotions in question, and involved different applicants, a different position, and a different selection process. Plaintiffs' apparent contention that the Shealy decision suffices to raise an inference of discrimination with respect to promotions in the Albany Fire Department is nonsensical. To establish pretext, Plaintiffs must offer evidence to rebut Defendants' showing with respect to the Harris and Hayslip promotions, which are the promotions at issue in this case. Plaintiffs have failed to do so.

Id. Based on these conclusions, the district court found that Plaintiffs' disparate treatment claim failed as a matter of law because Plaintiffs could not show pretext.

The district court then went on to reject, with little commentary, Plaintiffs' individual capacity claims against Fields and Jackson under Title VII, on the ground that Title VII does not permit such claims; and their § 1981 claims, on the same grounds that it rejected Plaintiffs' Title VII claim as well as the additional ground that a discrimination claim against a state actor must proceed under 42 U.S.C. § 1983, not § 1981. Lastly, the court rejected Plaintiffs' §§ 1985 and 1986 conspiracy claims on the grounds that (1) Plaintiffs' underlying substantive claims were without merit; (2) the conspiracy allegations -- which relate to an alleged "de facto" agreement between Chief Fields and City Manager Jackson to make the

11

promotion process more favorable to blacks -- ran afoul of the "intercorporate conspiracy" doctrine; and (3) with regard to the § 1986 claim, it was time-barred. Id. at 1380. These appeals ensued.

## II.

We give plenary review to a district court's grant of summary judgment. See Burton v. City of Belle Glade, 178 F.3d 1175, 1186 (11th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only "if the evidence is such that a reasonable [factfinder] could return a verdict" for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510-12 (1986)).

If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the court must enter summary judgment for the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Moreover, when the non-moving party bears the burden of proof on an issue, the moving party need not

"support its motion with affidavits or other similar material negating the opponent's claim." Id. at 323, 106 S. Ct. at 2553. Instead, the moving party simply may "'show[]' -- that is[], point out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554 (citation omitted). In assessing whether the movant has met its burden, "the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion" and "'all reasonable doubts about the facts should be resolved in favor of the non-movant.'" Burton, 178 F.3d at 1187 (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982) (citations omitted)). We review the district court's summary judgment orders in accordance with these familiar standards.[4]

### III.

At the outset, we must clarify precisely which claims and theories are at issue in this appeal. Plaintiffs make no mention of their claims for individual liability under Title VII, for relief under § 1981, and for relief on a conspiracy theory under § 1986. Because those issues are not briefed, they are deemed

---

[4]Plaintiffs cite several older cases for the proposition that "in general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). We recently rejected that proposition, explaining that "the summary judgment rule applies in job discrimination cases just as in other cases." Chapman v. A.I. Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

abandoned. Moreover, although Plaintiffs make a single reference in their brief to Defendants' liability on a theory of Title VII disparate impact, they do not discuss the district court's analysis on that issue and do not make any legal or factual argument as to why they have established a disparate impact claim. Accordingly, we regard the disparate impact claim also as abandoned.[5] The causes of action that remain, therefore, are the Title VII disparate treatment claim and the § 1985 conspiracy claim. For the reasons discussed below, neither of these claims can withstand summary judgment.

A.

We first address Plaintiffs' disparate treatment claim. Plaintiffs essentially contend that the Defendants -- specifically the sole decision-maker, Chief Fields -- treated them differently based on their white race when he selected their black counterparts, Harris and Hayslip, for the two lieutenant openings in question. Plaintiffs do <u>not</u> suggest that Harris and Hayslip were unqualified for the promotions, but argue that a reasonable jury could conclude that Fields selected those firefighters not because they were better qualified, but rather because they are, as he is, black.

---

[5]In any event, we see no error in the district court's rejection of these abandoned claims.

14

The framework for analyzing Plaintiffs' Title VII disparate treatment claim is well-settled.  As we recently explained in EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000):

> There are two theories of intentional discrimination under Title VII: disparate treatment and pattern or practice discrimination. Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence.  See [Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1083 (11th Cir. 1996)] (observing that a "'plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent'" to prove a disparate treatment claim) (quoting Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994)). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 580-81 (11th Cir. 1989)). Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas paradigm for circumstantial evidence claims.

Under the rubric of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), "[t]o establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted."  Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997) (citing Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988)). Once these elements are established, the defendant has the burden of producing a

15

legitimate, non-discriminatory reason for the challenged employment action.  See, e.g., Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981)).

If such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination.  See, e.g., Holifield, 115 F.3d at 1565; Combs, 106 F.3d at 1528 (plaintiff "has the opportunity to discredit the defendant's proffered reasons for its decision").  In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000), the Supreme Court explained that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated" and be sufficient to withstand a motion for judgment as a matter of law.  "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Id.

Here, there is no real dispute that Plaintiffs have introduced sufficient evidence to support their prima facie case.  Nor is there a genuine dispute that

16

Defendants have articulated legitimate, non-discriminatory reasons for the promotion of Harris and Hayslip instead of the Plaintiffs. Chief Fields testified that he considered Harris to possess the greatest level of maturity, leadership skills, interpersonal skills, and willingness to support the fire department and city management and policies -- the factors that Chief Fields considered dispositive in choosing among the pool of qualified applicants. Similarly, Chief Fields testified that he selected Hayslip based on the recommendations of other senior firefighters and because he felt that Hayslip showed the most leadership potential. The issue on appeal, therefore, boils down to the sufficiency of Plaintiffs' evidence of pretext.

As they did in the district court, Plaintiffs rely primarily on five points to show that Chief Fields's decisions were actually motivated by race and, in particular, a desire to promote black firefighters over whites: (1) statistical evidence that Chief Fields scored black candidates higher on the oral phase of the qualification exercise than he did white candidates, even though white candidates scored higher on the "objective" phases of that process; (2) Defendants' decision to make the hiring process largely subjective; (3) evidence that the Plaintiffs were more qualified than Harris and Hayslip, both objectively and under the subjective criteria articulated by Chief Fields; (4) the fact that the City's affirmative action

plan sets hiring and promotion goals favoring blacks; and (5) the fact that a district court (subsequently affirmed by this Court) rejected Chief Fields's race-neutral explanation for the allegedly discriminatory promotion decision at issue in the Shealy litigation.

Each of those issues is discussed below. Beforehand, however, there is a threshold barrier to Plaintiffs' pretext argument. Defendants contend -- without contradiction or even explanation by Plaintiffs -- that Plaintiffs have admitted that Chief Fields "did not consider race" in making the challenged decisions. The admission occurred in connection with Defendants' Statement of Material Facts in Support of the City Defendants' Motion for Summary Judgment (filed in nearly identical form in both lawsuits). In that document, Defendants listed as Fact Nos. 18-19: "When evaluating qualified candidates for promotion, Chief Fields evaluated a number of factors, including the candidates' work histories, certificates and classes taken, leadership, maturity, interpersonal skills, and job performance. The Chief did not consider race" (emphasis added). In their subsequent Memorandum of Law in Support of Response to Defendants' Motion for Summary Judgment (again, filed in nearly identical form in both cases), Plaintiffs admitted that those statements, among others, "are true statements of objective facts" (emphasis added). Denney, et al.'s Memorandum of Law in Support of Response

18

to Defendants' Motion for Summary Judgment, Mar. 4, 1999, at 2; Potter's

Memorandum of Law in Support of Response to Defendants' Motion for Summary

Judgment, Mar. 4, 1999, at 2.

These admissions flatly contradict Plaintiffs' theory that race was the

motivating factor in the challenged promotion decisions, and are plainly

incompatible with a claim of Title VII disparate treatment liability.  We could

decide the appeal on this basis alone.  See Jones v. Gerwens, 874 F.2d 1534, 1537

n.3 (11th Cir. 1989) (treating fact as conceded, in accordance with local district

court rule, where party opposing summary judgment failed to controvert the fact as

described in the movant's statement of undisputed material facts); see also

American Nat'l Bank v. FDIC, 710 F.2d 1528, 1536 (11th Cir. 1983) (applying

doctrine of judicial estoppel, which applies "to the calculated assertion of divergent

sworn positions").  We do not do so, because Plaintiffs' claims fail regardless of

the effect of their admissions.[6]  Nevertheless, the admissions are at the very least an

additional piece of record evidence undermining Plaintiffs' claims of pretext and

supporting the district court's entry of summary judgment.

---

[6]We also recognize that, at other points in the record, Plaintiffs clearly articulated their position that Chief Fields considered race in making the challenged promotion decisions.

19

Turning to Plaintiffs' arguments regarding pretext, we first address their statistical evidence. Like the district court, we find that this evidence would not have significant probative value to a reasonable jury. Plaintiffs' expert, Dr. Cook, examined the 1995 qualification exercise for lieutenant openings, and calculated that Chief Fields scored black candidates higher on the interview portion of the three-stage exercise than he did white candidates. Moreover, asserted Cook, Chief Fields did so even though white candidates scored higher on the "objective" phases of that process (entailing the written test and the assessment center). As Plaintiffs see it, this evidence demonstrates that Fields was biased toward blacks, even to the point of "race norming" the qualification exercise to ensure blacks would advance to the qualified applicant pool.

Defendants counter that Plaintiffs' statistical evidence is incomplete and misleading. First, they observe that Dr. Cook himself conceded -- as the record shows and as any reasonable person would assume -- that the oral exam explored topics and job skills different from those evaluated during the other two stages of the qualification exercise. Defendants insist that this is exactly what explains the scoring disparities highlighted by Dr. Cook. Second, Defendants' statistical expert, Dr. Peterson, concluded that, overall, qualified black applicants were selected for promotion at a rate statistically insignificant from the rate at which

20

qualified white applicants were promoted. This fact undermines any suggestion that Chief Fields was rigging the process in favor of blacks. Third, Defendants point out that, according to Cook, the same statistical disparity between blacks and whites on the oral exam occurred in a subsequent year (1997), when Chief Fields was not involved in the interview process at all. Finally, Defendants stress that it is undisputed that the actual decisions challenged in this case were made without consideration of qualified candidates' relative scores on the qualification exercise. For these reasons, Defendants maintain, and we agree, that on this record Cook's statistical evidence does not constitute sufficiently developed proof of pretext to allow the Plaintiffs to overcome summary judgment. While in a different case statistical evidence of the kind marshaled by the Plaintiffs might support an inference of discrimination, it is insufficient on this record to avoid summary judgment.

Next, Plaintiffs cite as evidence of pretext the fact that, after the qualification exercise, the hiring process became purely subjective. Plaintiffs do not squarely challenge the legitimacy of the subjective factors considered by Chief Fields. Instead, the concern appears to be that the largely "objective" bar to qualifying for further consideration was set so low as to be almost useless in weeding out applicants, and that the individual qualification exercise scores dropped out of the

picture once the pool of qualified applicants was established.  According to Plaintiffs, the decision to make the promotion process so dependent upon "unreviewable" subjective factors, rather than objective data, itself constitutes proof of an intent to discriminate.

This argument is unconvincing.  Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes.  See Allison, 680 F.2d at 1322 ("An employer's decision may properly be based on subjective factors."); see also Risher v. Aldridge, 889 F.2d 592, 597 (5th Cir. 1989) (rejecting Title VII claim despite plaintiff's argument that employer improperly considered only subjective factors rather than the objective factors, and explaining that "[s]ubjective criteria necessarily and legitimately enter into personnel decisions involving supervisory positions").  Plaintiffs themselves rightly concede that "it is [not] per se improper to utilize subjective promotional standards; indeed, for higher level executive and managerial promotions, subjective factors may play a very substantial role."

As we recently explained in Chapman:

A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the McDonnell Douglas/Burdine

22

analysis. Indeed, subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy. . . . Personal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions.  Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion, Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 991, 108 S. Ct. 2777, 2787 (1988), yet they are essential to an individual's success in a supervisory or professional position.  See id. at 999, 108 S. Ct. at 2791 ("It would be a most radical interpretation of Title VII for a court to enjoin use of an historically settled process and plainly relevant criteria largely because they lead to decisions which are difficult for a court to review.").  It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.  See Watson [], 487 U.S. at 999, 108 S. Ct. at 2791. To phrase it differently, subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions.  Subjective reasons can be just as valid as objective reasons. . . .  A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.

229 F.3d at 1033-34 (citations omitted).[7]

As Chapman makes clear, an employer's use of subjective factors in making

a hiring or promotion decision does not raise a red flag.  Certainly nothing in our

---

[7]Plaintiffs cite Howard v. BP Oil Co., Inc., 32 F.3d 520, 525 (11th Cir. 1994) for the proposition that courts view "subjective . . . criteria with greater scrutiny than [they] would if [the defendant] strictly followed written criteria" in making an employment decision.  That proposition "does not change the fact that [the plaintiff still] must introduce evidence of discrimination."  Id. Moreover, Howard pre-dates this Court's recent en banc opinion in Chapman, which confirmed beyond doubt the appropriateness of an employer using legitimate, non-discriminatory subjective factors in its decision-making.

23

precedent establishes that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination. To reiterate, Plaintiffs do not squarely challenge the legitimacy of the specific criteria that Fields asserts he took into account in deciding who to promote. Defendants' expert, Dr. Austin, endorsed the appropriateness of those criteria, and Plaintiffs did not contradict that evidence, other than to propose that the process should have relied more heavily on objective data such as the written test scores from the qualification exercise. Although Plaintiffs, as noted below, disagree with how the various candidates stacked up under the criteria considered by Chief Fields, they completely fail to show discriminatory intent in the selection of those criteria or in the choice to focus on those criteria and correspondingly downplay "objective" data from the qualification exercise.[8] Simply put, the fact that Chief Fields's decisions were based on subjective considerations, such as a candidate's leadership ability and maturity, does not by itself advance Plaintiffs' pretext argument.

Plaintiffs next assert that they were more qualified to be promoted to lieutenant than Harris or Hayslip. Our precedent, however, requires a strong

---

[8]It is not a federal court's role to decide the wisdom of those kinds of choices, so long as they are not discriminatory in purpose or effect. See Combs, 106 F.3d at 1543 (stressing that "federal courts do not sit to second-guess the business judgment of employers").

showing of a disparity in qualifications in order for an inference of discrimination to arise. As we recently explained: "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. . . . '[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'" Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253-54 (11th Cir. 2000) (quoting Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999)); accord, Alexander v. Fulton County, 207 F.3d 1303, 1339-40 (11th Cir. 2000).

Not only do Plaintiffs fail to acknowledge this case law, which makes clear that they ultimately must do more to show pretext than prove that they are better qualified than Harris and Hayslip, but they also fail to mount a persuasive showing that they are, in fact, better qualified. Plaintiffs fail completely to explain why they believe that Webb and McGee were more qualified than Harris and Hayslip. As for Pinson, Plaintiffs assert only that he had relatively more "training" and had served as an "acting Lieutenant." But Defendants correctly counter that training was only one of the considerations taken into account by Chief Fields, and Plaintiffs make no effort to explain how Pinson was more qualified, let alone

substantially more qualified, with respect to the other considerations (such as leadership, communications skills, support for management, and so forth) relied upon by Fields.

With respect to Denney, Plaintiffs assert that he was more qualified because he scored higher than Harris during the qualification exercise on the written exam and the assessment center, and, unlike Hayslip, had experience supervising stations. But Plaintiffs do not explain how Denney's limited supervisory experience makes him so much more qualified to be a lieutenant than Harris and Hayslip; Plaintiffs do not, for example, dispute the two black candidates' superiority in other areas considered by Chief Fields (indeed, Plaintiffs make little effort to undermine the "fit" between Harris's and Hayslip's qualifications and the criteria articulated by Chief Fields). The fact that Denney scored higher than Harris in two of the three stages of the qualifications exercise does not carry a great deal of weight in this case. Under the Department's promotion policy, qualification exercise scores mattered only for purposes of determining the pool of qualified candidates. After that, other criteria were determinative. Unless we were to find that this policy was itself irrational or motivated by discriminatory intent -- an argument unsupported on this record -- then Denney's relatively higher scores

26

on the "objective" portion of qualification exercise would not prove that he is more qualified, let alone substantially more qualified, to be a lieutenant.

Finally, with respect to Potter, it is true that he received the highest overall score, by some margin, on the qualification exercise relative to Harris, Hayslip, and the other Plaintiffs. Plaintiffs also observe that in his most recent performance evaluation Potter received seven marks of "very effective," while Harris received only three. As Defendants observe, however, the qualification exercise is not intended to gauge a candidate's ability on all of the skills necessary to be a lieutenant; it is intended to gauge some skills solely for the purpose of determining which candidates move forward in the promotion process. Thus, it does not follow from Potter's relatively higher scores that he was substantially more qualified. Moreover, Defendants persuasively observe that Potter's evaluations contained fluctuations akin to those of Harris and Hayslip. In addition, Defendants point out that Hayslip's evaluations emphasized that he "goes the extra mile," a characterization not found on Potter's evaluation, and also that Hayslip (unlike Potter) received a "very effective" mark for interpersonal skills -- one of the criteria especially valued by Chief Fields.

In the end, although one perhaps could argue that Potter was indeed the best candidate on paper, the evidence marshaled by the Plaintiffs does not demonstrate

27

that he was so much more qualified than his black counterparts that a reasonable jury, on this record, could infer discrimination from the mere fact of his non-selection.  Such a showing is even less evident for the other four Plaintiffs.  As we often have said, Title VII is not designed to make federal courts "'sit as a super-personnel department that reexamines an entity's business decisions.'"  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  We do not ask whether the employer selected the "most" qualified candidate, but only whether it selected the candidate based on an unlawful motive.  See, e.g., Alexander, 207 F.3d at 1339.

Plaintiffs' next evidence of pretext relates to the City's affirmative action plan, and the fact that it sets goals (which Plaintiffs inaccurately describe as rigid "quotas") for the hiring of blacks and members of other protected groups.  Courts have been extremely wary of citing lawful affirmative action plans as evidence of an employer's pretext.  See, e.g., Christensen v. Equitable Life Assur. Soc'y, 767 F.2d 340, 343 (7th Cir. 1985) ("[A] lawful affirmative action program is not evidence of discrimination against the majority.  National policy permits the use of voluntary affirmative action programs to remedy the legacy of discrimination.  For the courts to discourage the use of such programs by treating them as evidence in themselves of the very discrimination they are designed to eradicate would be

28

improper.") (citing Parker v. Baltimore & Ohio R.R. Co., 652 F.2d 1012, 1017 (D.C. Cir. 1981)). Although Plaintiffs repeatedly profess their view that the City's AA Plan is illegal, they do not seek to have the plan invalidated, and do not assert that the plan is under attack elsewhere. The setting of goals for minority hiring or promotion can be lawful. See, e.g., Peightal v. Metropolitan Dade County, 26 F.3d 1545 (11th Cir. 1994). Moreover, the City's AA Plan expressly states that promotions and similar hiring decisions are to be made without regard to race. Plaintiffs do not come close to making the kind of showing necessary for this Court to declare the City's AA Plan unlawful.

In any event, there is no evidence that Chief Fields, in making the challenged promotion decisions, considered the City's AA Plan, let alone thought that by promoting Harris and Hayslip he would help fulfill some plan-mandated quota. The AA Plan, in short, is not evidence upon which a reasonable jury, on this record, could find pretext.

This Court's recent opinion in Bass v. Board of County Commissioners, 99-10579, -- F.3d -- (11th Cir. Feb. 21, 2001), is not to the contrary. In Bass, we vacated a grant of summary judgment in a discrimination case due in part to evidence that the employer acted pursuant to an affirmative action plan in making the challenged hiring decision. We observed that "while the mere existence of an

affirmative action plan does not constitute direct evidence of discrimination, the existence of a plan combined with other circumstances of the type present in this case make available to a jury the reasonable inference that the employer was acting pursuant to the plan despite statements to the contrary from the decisionmakers involved." Id., slip op. at 1475. Here, there is no evidence that Chief Fields made the challenged promotion decisions pursuant to or in compliance with the City's affirmative action plan; nor do Plaintiffs make a reasoned attempt to show, as they would have to show in that circumstance, that the City's plan is invalid under Title VII or the Constitution. In addition, the circumstantial evidence of discrimination was significantly more compelling in Bass than it is here. Among other things, in that case it was undisputed that the individual selected for the position was unqualified, and that the defendant deviated from its normal practices in selecting the individual. Those facts, which in Bass inexorably pointed toward the conclusion that the defendant did (despite its denials) act pursuant to its affirmative action plan, are not present on this record. For all of these reasons, Bass does not help the Plaintiffs.[9]

---

[9]Nor does Bass advance the Plaintiffs' attack on the subjectivity of the Department's promotion process. On the contrary, citing Chapman, we held in Bass that the employer had articulated with sufficient clarity and specificity its subjective rationale for not hiring the plaintiff. Id., slip op. at 1468-69.

Plaintiffs' final argument for pretext concerns the determination in Shealy that Fields, contrary to his testimony and the City's argument in that case, discriminated against white candidates in making a promotion decision in 1994 for the position of Battalion Chief. Defendants contend that this fact has little probative value in this case, because it concerned a different position and occurred two years before the decisions at issue here. The district court also observed that the Shealy case involved different applicants and a different selection process. Those key distinctions may not totally deprive the Shealy finding of its persuasive force as evidence of Fields's intent to discriminate against whites; a key similarity is that Shealy involved the same actor making the same kind of personnel decision. Nevertheless, the distinctions are important, and weigh heavily against attaching a great deal of probative value to the Shealy litigation. More generally, courts are reluctant to consider "prior bad acts" in this context where those acts do not relate directly to the plaintiffs. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir. 1990) (Defendants' preparation of documents referring to ages or birth dates of employees not significant evidence of unlawful discriminatory intent in age discrimination case where plaintiffs' jobs were eliminated in a reduction-in-force and thus "[n]one of the documents relate to specific actions taken towards

plaintiffs because of plaintiffs' age").[10]  Finally, we think it especially notable that

it was the same district judge who heard <u>Shealy</u> who concluded in this case that the

outcome in <u>Shealy</u> did not constitute meaningful evidence of Fields's

discriminatory intent.  In these circumstances, we do not believe that the findings

in <u>Shealy</u> are sufficient to push the Plaintiffs past summary judgment.

For all of the foregoing reasons, viewing the record as a whole, Plaintiffs

have come forward with insufficient persuasive evidence to convince a reasonable

jury that Fields's asserted reasons for awarding these promotions to Harris and

Hayslip were a pretext for intentional discrimination against whites.  Accordingly,

we would affirm the district court's entry of summary judgment on the Title VII

disparate treatment claim even if we were to discount totally Plaintiffs' damaging

admissions.

## B.

Plaintiffs' conspiracy claim under § 1985 requires little separate discussion.

In a single paragraph, Plaintiffs contend that the district court improperly rejected

their conspiracy allegations under 42 U.S.C. § 1985.  As Plaintiffs see it, there is a

---

[10]It is not at all clear that this evidence would be admissible under Fed. R. Evid. 401, 403, and 404(b).  In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form.  See Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996).  The district court did not come at the issue from the standpoint of admissibility, however, and we need not do so ourselves.

"de facto" conspiracy between the City Manager (Jackson) and Chief Fields to increase the role of subjective evaluation in the promotion process. The unstated, but apparent, implication is that these individuals have done so to make it easier for the Department to promote blacks at the expense of whites' constitutional and statutory rights to equal treatment. Plaintiffs also at times allege a conspiracy to "deny relief through the internal grievance process to those who have raised reverse discrimination claims." Plaintiffs do not expressly identify any perceived error in the district court's analysis.

The elements of a cause of action under § 1985(3) -- which is the subdivision of § 1985 seemingly at issue here -- are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Lucero v. Operation Rescue, 954 F.2d 624, 627 (11th Cir. 1992) (citing United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356 (1983)). Having concluded that Plaintiffs' substantive claims fail on the merits, their conspiracy claim fails as

well because Plaintiffs would not have been "deprived of any rights or privilege" by the Defendants' allegedly wrongful acts.

Moreover, Plaintiffs' conspiracy claim fails under the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The doctrine applies to public entities such as the City and its personnel. See Dickerson v. Alachua County Comm'n, 200 F.3d 761, 768 (11th Cir. 2000) (rejecting employee's § 1985(3) claim on that basis where employee alleged civil conspiracy among solely County employees); Chambliss v. Foote, 562 F.2d 1015 (5th Cir. 1977), aff'g, 421 F. Supp. 12, 15 (E.D. La. 1976) (applying intracorporate conspiracy doctrine to shield the public university from § 1985(3) liability in a civil conspiracy claim); compare McAndrew, 206 F.3d at 1038-39 (doctrine inapplicable to criminal conspiracy allegations under § 1985(2)).[11] Here,

_____

[11]The single case cited by Plaintiffs, Park v. City of Atlanta, 120 F.3d 1157 (11th Cir. 1997) is inapposite. That decision states that a person need not participate in a § 1985 conspiracy to be liable under § 1986 for failing to prevent the conspiracy. Here, Plaintiffs have waived their claim under § 1986 by failing to so much as mention that statute in their brief; in any event, there is no

34

the only two conspirators identified by Plaintiffs -- Fields and Jackson -- are both City employees; no outsiders are alleged to be involved. The alleged subject of their conspiracy -- non-criminal manipulation of the promotion process to deprive white employees of promotional opportunities -- relates to their performance of their official, not personal, duties. Accordingly, because Fields and Jackson were both effectively acting as the City itself when they entered into their alleged illicit agreement, there can be no claim against them under § 1985, and the district court's rejection of that claim, like its rejection of the Title VII claim, must be affirmed.

**AFFIRMED.**

---

actionable § 1985 conspiracy and no underlying substantive violation of law.